```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMG NAT'L TRUST BANK,              :
                                   :
            Plaintiff,             :   CIVIL ACTION
                                   :
     v.                            :   NO. 06-CV-4337
                                   :
STEPHEN C. RIES                    :   (consolidated with
                                   :   NO. 09-CV-3061)
            Defendant.             :
```

## MEMORANDUM AND ORDER

**Joyner, C.J.**                                    **December 28, 2011**

Before this Court are Defendants' Motion for Summary Judgment (Doc. Nos. 20 and 21), Plaintiff's Response in opposition thereto (Doc. Nos. 23 and 24), Defendants' Reply (Doc. No. 26) and Plaintiff's Sur-Reply (Doc. No. 28). For the reasons set forth in this Memorandum, the Defendants' Motion is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

This case centers on a restrictive covenant and a confidentiality provision in Defendant Stephen Ries's ("Ries") contract with his former employer, Plaintiff AMG National Trust Bank ("AMG"). The two-year restrictive period has long since expired. This case, however, persists. The facts have been articulated several times, both by this Court and the Third Circuit. See AMG Nat'l Trust Bank v. Ries, 2007 U.S. Dist. LEXIS

1

68083 (E.D. Pa. Sept. 13, 2007); Ries, 2008 U.S. Dist. LEXIS 10409 (E.D. Pa. Feb. 12, 2008); Ries, 2008 U.S. Dist. LEXIS 44014 (E.D. Pa. June 4, 2008); Ries, 319 Fed. Appx. 90 (3d Cir. 2008); Ries, 2011 U.S. Dist. LEXIS 79361 (E.D. Pa. July 20, 2011). In lieu of repetition, we incorporate those previous synopses by reference and discuss only the facts pertinent to the present Motion.

**STANDARD OF REVIEW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 535 (3d Cir. 2007); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the non-moving party cannot rely on "bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F. 3d 584, 594 (3d

Cir. 2005). When the non-moving party is the plaintiff, she must "make a showing sufficient to establish the existence of [every] element essential to [her] case and on which [she] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## DISCUSSION

AMG charges Ries with breach of contract for violating the restrictive covenant in his employment agreement; breach of fiduciary duty for his conduct; and, violation of the Uniform Trade Secrets Act ("UTSA"), 12 Pa. C.S.A. §§ 5301-5308. In 2009, AMG brought a similar complaint against QRS Wealth Management, LLC ("QRS")(of which Ries is the sole shareholder) alleging violation of the UTSA and tortious interference with contract. Defendants move for summary judgment on all counts.

**Count I- Breach of Contract Against Defendant Ries**

Defendants claim that "the record now indisputably establishes that AMG's Employment Agreement is void and unenforceable as a matter of law, and that entry of the TRO and the Preliminary Injunction were based on an incomplete and erroneous record." (Defs. Mot. at 2, Doc. No. 20). We do not agree.[1]

---

[1] The parties dispute whether Defendants can re-litigate the enforceability of the Employment Agreement under the "law of the case" doctrine. "[W]hile the law of the case doctrine bars courts from reconsidering matters actually decided, it does not prohibit courts from revisiting matters that are 'avowedly preliminary or tentative.'" Council of Alternative Political Parties v. Hooks, 179 F.3d 64, 69-70 (3d Cir. 1999)(internal citations omitted).

3

While Colorado law generally prohibits restrictive covenants, there are several statutory exceptions.[2] A restrictive covenant need only fall within *one* of these recognized exceptions to be valid and enforceable. See King v. PA Consulting Group, Inc., 485 F.3d 577, 587 (10th Cir. 2007); Ries, 2011 U.S. Dist. LEXIS 79361 at * 9-10. The covenant in Ries' contract with AMG could fall within either the "trade-secrets" exception, Colo. Rev. Stat. §8-2-113(2)(b) or the "executive-management" exception, §8-2-113(2)(d).[3]

Both this Court and the Third Circuit have already determined that the trade-secrets exception applies and renders the restrictive covenant enforceable. Ries, 2011 U.S. Dist. LEXIS

---

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held...A party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.

Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981)(citations omitted); see also New Jersey Hosp. Ass'n v. Waldman, 73 F.3d 509, 519 (3d Cir. 1995). We find Plaintiff's attempts to invoke the "law of the case" doctrine misguided; however, based on the record before us, and as discussed *infra*, we agree that "Defendants have offered no reason for the Court to stray from legal determinations already affirmed by the Third Circuit." (See Pl. Sur-Reply at 7, Doc. No. 28).

[2] We "apply Colorado law to determine the enforceability and to construe the terms and conditions of the parties' Confidential Information and Employment Agreement." Ries, 2007 U.S. Dist. LEXIS 68083 at *15.

[3] The relevant Colorado law provides:
    (2) Any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection (2) shall apply to:...
        (b) Any contract for the protection of trade secrets;...[or]
        (d) Executive and management personnel and officers and employees who constitute professional staff to executive and management personnel.
  See Colo. Stat. Ann. § 8-2-113.

4

79361 at *10; Ries, 319 Fed. Appx. at 92. Defendants continue to raise the same opposition to this decision: in order to be enforceable under the "trade secrets" exception, the purpose of a restrictive covenant must be to protect secrets, not solely to limit competition, as AMG is attempting to do. This argument has been considered and rejected. "The record shows that AMG took numerous steps to protect the client information that it described as confidential in the Agreement and provided to Ries." Ries, 319 Fed. Appx. at 92. These measures, as well as the language of the contract, indicate the importance AMG placed on the secrecy of client information. AMG has shown that the restrictive covenant served the allowable purpose of protecting trade secrets, and thus could be enforced as written to restrain Mr. Ries from engaging with AMG clients for a two-year window.

The Third Circuit's silence on whether the contract could also fall within the executive-management exception does not disturb our previous finding that this exception provides an alternate grounds for enforcing the contract. Rather, the Third Circuit's holding demonstrates that Plaintiff need only establish that the restrictive covenant is enforceable under the trade-secrets exception. Whether Ries falls within the executive-management exception has been and remains a hotly contested dispute. At its core, it is a question of fact that cannot be resolved at this stage. See Ries, 2011 U.S. Dist. LEXIS 79361 at

*21 n.6; see also Phoenix Capital, Inc. v. Dowell, 176 P.3d 835, 841 (Colo. App. 2007); DISH Network Corp. v. Altomari, 224 P.3d 362, 366 (Colo. App. 2009).

We recognize that through discovery Defendants now have additional evidence to support their contentions. However, this evidence does not negate the existing record that supports Plaintiff's stance, as well as the prior decisions of this Court. A reasonable juror could determine that Ries breached a valid restrictive covenant.[4]

Defendants maintain that even if the contract terms are enforceable, AMG's claim fails as a matter of law because it cannot prove damages. While we disagree with Defendants' conclusion, they correctly point out "that a party attempting to recover on a claim for breach of contract must prove...resulting damages to the plaintiff." Western Distrib. Co. v. Diodosio, 841 P.2d 1053, 1058 (Colo. 1992)(citations omitted); Mollinger-Wilson v. Quizno's Franchise Co., 122 Fed. Appx. 917, 922 (10th Cir. 2004). AMG initially sought to enforce the liquidated damages provision in Ries's contract as a remedy for his breach. However, AMG seemingly abandoned this argument, anticipating that it would receive the stipulated amount as a measure of the damages arising

---

[4] Defendants put forth additional arguments for why there is no breach of contract as a matter of law, including an attempt to redefine the meaning of "AMG client" and an assertion that the doctrine of unclean hands bars AMG's claim because of AMG's alleged misrepresentations to the Court. We again reject these arguments. See Ries, 2011 U.S. Dist. LEXIS 79361 at *21-22; Order of Aug. 18, 2011, Doc. No. 156.

out of Ries's contempt of the preliminary injunction. (See Pl. Resp. at 17 n.13, Doc. No. 23). We did not order such damages as a remedy for Ries's contempt. Moreover, the liquidated damages provision in Ries's employment contract is void as a matter of law and cannot be the measure of damages for Ries's breach of contract.

A liquidated damages provision is valid and enforceable only when the necessary elements are met: "(1) the anticipated damages in case of breach must be difficult to ascertain; (2) the parties must mutually intend to liquidate them in advance; and (3) the amount stated as liquidated damages must be reasonable and proportionate to the presumed injury." Yerton v. Bowden, 762 P.2d 786, 788 (Colo. Ct. App. 1988). The provision amounts to an unenforceable penalty when it is "unreasonably large for the expected loss from a breach of contract," Klinger v. Adams Cnty. Sch. Dist. No. 50, 130 P.3d 1027, 1034 (Colo. 2006), or "unreasonably disproportionate to the expected loss on the very breach that did occur and was sued upon." Bd. of Cnty. Comm'rs v. City & Cnty. of Denver, 40 P.3d 25, 32 (Colo. App. 2001). See Planned Pethood Plus, Inc. v. KeyCorp, Inc., 228 P.3d 262, 264 (Colo. App. 2010). Whether liquidated damages constitute a penalty is a question of fact "[u]nless the contract on its face reveals that the stipulated liquidated damages are so

disproportionate to any possible loss as to constitute a penalty." Klinger, 130 P.3d at 1034.

Ries's contract states that each violation of the restrictive covenant "shall result in reasonable liquidated money damages to AMG of **ten times the most recent annual gross fee** income attributable to such client or participant, or in the case of a prospective client or participant, **ten times the proposed annual gross fee**." ("Confidential Information and Employment Agreement" at ¶5(b), Defs. Mot. Ex. G)(emphasis added). Under the terms of the restrictive covenant, AMG could legally restrict Ries from soliciting clients for the two year period following his termination. Once that period elapsed, AMG no longer had grounds to prevent Ries from competing for business. The two-year restrictive covenant thus provides AMG with two years of protected annual gross fees from Ries's clients before Ries is once again able to perform services for them. We acknowledge the difficulty in measuring the anticipated damage that would result from a violation of the restrictive covenant. Yet, ten years worth of projected client fees per violation is an unreasonably large and incredibly disproportionate estimate of the presumed actual damages caused by breaching a two-year restrictive covenant.

8

AMG provides no counter examples to support its multiplier of ten,[5] nor did we unearth a single such case in any jurisdiction. Instead, case law supports Defendants' argument that while employers often "base damages for non-compete violations on a multiple of the previous year's fees generated from the wrongfully-solicited client," these fees are rarely "multiplied by a number greater than the number of years during which the non-competition agreement is in effect." (See Defs. Mot. at 29).[6]

Although the liquidated damages provision amounts to a voidable penalty as a matter of law, AMG can still prove its claim by demonstrating actual damages arising from a breach by Ries. See Yerton, 762 P.2d at 788. Absent a valid liquidated damages provision, the measure of damages for breach of a restrictive covenant is the loss of profits attributable to the breach. See Logixx Automation, Inc. v. Lawrence Michels Family

---

[5] "Rather than burden the Court with unnecessary arguments, AMG has elected not to respond to Defendants' lengthy attack on the reasonableness of the liquidated damage provision contained in the Employment Agreement." (Pl. Resp. at 17 n.13).However, AMG's past arguments in the course of this litigation only further support our conclusion that the liquidated damages provision is disproportionate to the actual loss from a breach and punitive in nature. AMG sought the same stipulated liquidated damages as a measure of contempt sanctions, arguing that this amount would both "compensate AMG for the harm Ries caused" and "punish Defendant for his wrongdoing." (Mem. in Supp. of Pl.'s Second Mot. for Contempt 2, Doc. No. 103-1); see also Ries, 2011 U.S. Dist. LEXIS 79361 at *13-14.

[6] Even when the multiplier is equal to the number of restricted years, courts have invalidated liquidated damages provisions as unreasonable penalties. See, e.g., Burzee v. Park Ave. Ins. Agency, Inc., 946 So.2d 1200 (Fla. Dist. Ct. App. 2006) (liquidated damages equaling two years of client fees, plus $10,000, unreasonable penalty for violating a two-year non-compete agreement); Coffman v. Olson & Co., P.C., 906 N.E.2d 201 (Ind. Ct. App. 2009)(two times client's most recent annual fee unreasonable liquidated damages for two-year non-compete).

Trust, 56 P.3d 1224, 1227 (Colo. App. 2002). While this loss is difficult to pinpoint, "it is sufficient for the plaintiff to provide a reasonable basis for computation, using the best evidence obtainable under the circumstances that will enable the trier of fact to arrive at a fairly approximate estimate of the loss." Casey v. Sweet, 2008 U.S. Dist. LEXIS 57914 at *9 (D. Colo. July 2, 2008)(citing Logixx Automation, 56 P.3d at 1227). The record contains sufficient evidence that AMG suffered actual damage from a breach of contract and can establish this requisite element of its claim. Thus, summary judgment is inappropriate. See also Ries, 319 Fed. Appx. at 93 (instructing that an assessment of the damage caused by Ries's actions should be left until a final determination of the merits of AMG's action).

**Count II- Breach of Fiduciary Duty Against Ries**

While we have conclusively determined that Colorado law governs Ries's employment contract, we have yet to determine whether the choice-of-law provision applies to the breach of fiduciary duty claim—a claim sounding in tort. "As a general rule, a choice of law provision will not be held to govern tort claims 'unless the fair import of the provision embraces all aspects of the legal relationship.'" SunGard Recovery Servs., L.P. v. Comcar Industr., Inc., 2003 U.S. Dist. LEXIS 15673 at *6 (E.D. Pa. August 19, 2003) (citing Jiffy Lube Int'l v. Jiffy Lube

of Pa., Inc., 848 F. Supp. 569, 576 (E.D. Pa. 1994)).[7] Yet, we refrain from analyzing the scope of the choice-of-law provision because there is no actual conflict between the potentially applicable laws. See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007)("If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary."); Allianz Ins. Co. v. SSR Realty Advisors, Inc., 2003 U.S. Dist. LEXIS 9585 at *9 (E.D. Pa. June 5, 2003)(counseling courts to avoid the choice of law question "where the laws of two jurisdictions would produce the same result on a particular issue.").

AMG's claim against Ries for breach of fiduciary duty is barred under both the Colorado "economic loss" rule and the Pennsylvania "gist of the action" doctrine. Both doctrines "operate[] to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims." Hart v. Arnold, 884 A.2d 316, 339 (Pa. Super. Ct. 2005); accord BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 72 (Colo. 2004).

The Pennsylvania "gist of the action" doctrine bars tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a

---

[7] We apply Pennsylvania choice of law rules in diversity jurisdiction cases such as this one. See Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 171 (3d Cir. 2011); see also SunGard, 2003 U.S. Dist. LEXIS 15673 at * 6-11 (discussing when contractual choice of law provisions encompass related tort claims); Black Box Corp. v. Markham, 127 Fed. Appx. 22, 25 (3d Cir. 2005)(same).

11

contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." <u>Brown & Brown, Inc. v. Cola</u>, 745 F. Supp. 2d 588, 619-620 (E.D. Pa. 2010)(quoting <u>Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.</u>, 2006 U.S. Dist. LEXIS 78890 at *5 (E.D. Pa. Oct. 30, 2006)).[8] "A breach of fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary duty alleged is grounded in contractual obligations." <u>Alpart v. Gen. Land Partners, Inc.</u>, 574 F. Supp. 2d 491, 499 (E.D. Pa. 2008).

Likewise, the Colorado "economic loss" rule "bars the Plaintiff from recovering in tort — such as a claim for breach of fiduciary duty — for injuries sustained as a direct result of the Defendants' alleged breach of contractual terms." <u>Tara Woods Ltd. P'ship v. Fannie Mae</u>, 731 F. Supp. 2d 1103, 1118 (D. Colo. 2010). "[A] party suffering only economic loss from a breach of an express or implied contractual duty may not assert a tort claim for such breach absent an independent duty of care under tort law." <u>Town of Alma v. AZCO Constr., Inc.</u>, 10 P.3d 1256, 1264 (Colo. 2000). This independent duty of care must be one that is not included in or memorialized by the contract itself. <u>Haynes</u>

---

[8] "Although the Pennsylvania Supreme Court has not explicitly adopted the gist of the action doctrine, both the Pennsylvania Superior Court and multiple United States District Courts have predicted that it will." <u>Brown & Brown, Inc.</u>, 745 F. Supp. 2d at 619 n.11.

12

Trane Serv. Agency, Inc. v. Am. Standard, Inc., 573 F.3d 947, 962 (10th Cir. 2009).

AMG contends that Ries behaved outrageously and asserts that "there is little doubt that the record supports AMG's claim for a breach of fiduciary duty." (Pl. Resp. at 25). But, AMG cites only one example of Ries's "rampant misconduct"—contacting Schwab while still on the AMG payroll even though his contract forbid such behavior. AMG acknowledges that the damages resulting from the alleged breach of fiduciary duty are "inextricably intertwined" with the damages resulting from Ries's violation of the restrictive covenant. Id. Moreover, the Employment Agreement appears to define the extent of Ries's fiduciary duty, and AMG fails to identify any duty owed by Ries that is not grounded in his contractual obligations. Thus, AMG cannot sustain this claim under either Pennsylvania or Colorado law.

**Count III- Violation of UTSA Against Ries and QRS**

The UTSA prohibits the "disclosure or use of a trade secret of another without express or implied consent by a person who...at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was...acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." 12 Pa. C.S.A. §5302. In evaluating whether particular information merits trade secret status, we consider several factors, including the extent to which the information is

13

known by both those within and outside the business, the measures taken to guard the secrecy of the information and the ease with which others could properly acquire it, and the value of the information in terms of development expense and market competition. Bro-Tech Corp. v. Thermax, Inc., 651 F. Supp. 2d 378, 409 (E.D. Pa. 2009)(citing Brett Senior & Assocs., P.C. v. Fitzgerald, 2007 U.S. Dist. LEXIS 50833 at *20 (E.D. Pa. July 13, 2007).

While customer lists are "at the very periphery of the law of unfair competition," courts have recognized that these lists may be entitled to protection as trade secrets under certain circumstances. Brett Senior, 2007 U.S. Dist. LEXIS 50833 at *21. "A compilation of customer data may qualify as a trade secret if it is not readily obtainable from another source and was generated in such a fashion that it constitutes intellectual property of the owner." Bro-Tech Corp., 651 F. Supp. 2d at 409. Thus, client information that an employer generates through expense, time and effort and then imparts to an employee may constitute trade secret information; basic, widely available information collected by the efforts of the employee does not. Id. at 410; Brett Senior, 2007 U.S. Dist. LEXIS 50833 at *23-24.

"Whether information qualifies for trade secret status is ordinarily a question of fact for the jury" and this case is no exception. See Bro-Tech Corp., 651 F. Supp. 2d at 410. Ries

14

argues that he independently obtained the client information at issue and thus the information cannot be deemed "trade secret" under the UTSA. In support of this argument, he identifies a handful of his seventy former clients and asserts that he was personally responsible for obtaining these accounts through his own efforts alone. But, AMG provides evidence that undermines this position. (See Pl. Resp. at 24-25). A reasonable juror could determine that Ries obtained client information only by virtue of his position at AMG, with the help of AMG's time, expense and efforts, and while he was subject to a confidentiality agreement.

Alternatively, Defendants argue that close personal relationships with customers cannot be classified as "trade secrets" under the UTSA even if those relationships were cultivated through the employer's efforts. In doing so, Defendants rely on Renee Beauty Salon v. Blose-Venable, 652 A.2d 345 (Pa. Super. Ct. 1995), and Carl A. Coleryahn Dairy, Inc. V. Schneider Dairy, 203 A.2d 469 (Pa. 1964), to no avail. While both cases recognized the importance of personal contact in the retention of customers, neither case involved confidentiality and noncompete clauses of the sort Ries agreed to in his Employment Agreement. But c.f., Charles Schwab & Co. v. Karpiak, 2007 U.S. Dist. LEXIS 2865 (E.D. Pa. Jan. 12, 2007) (adopting report and recommendation outlined in 2006 U.S. Dist. LEXIS 92763(E.D. Pa. Dec. 6, 2006)). In fact, the Court notes in Colteryahn that "the

15

presence of a non-disclosure covenant would be indicative of the confidential nature of the data protected." 203 A.2d at 473 n.6.

Furthermore, as AMG points out, it has limited its request for relief to the sixty or so former clients with whom Ries does not allege a close relationship (referred to as the "Residual Client List"). Under the UTSA, damages for misappropriation of a trade secret "may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." 12 Pa. C.S.A. §5304(a). But, AMG seeks only a permanent injunction that prohibits Defendants from using Ries's knowledge of AMG's trade secrets to contact the Residual Client List, which comprises the former clients Ries has not provided services for since leaving AMG. (Pl. Resp. at 15).[9]

This Court and the Third Circuit have both found sufficient evidence that the AMG client list constitutes a trade secret under the UTSA definition. This determination prompted our preliminary injunction to prevent Ries's misappropriation. To secure a permanent injunction to this effect, AMG needs to establish that Ries has client information that continues to meet the definition of a "trade secret" such that there remains the

---

[9] As discussed *supra*, there is sufficient evidence that AMG suffered actual loss from Ries's actions. Moreover, AMG provides evidence that QRS was unjustly enriched as a result. Even though AMG abandons a claim for damages on its UTSA claim, viewed in the light most favorable to AMG, the record could support such an award. Thus, we also reject Defendants' argument that AMG cannot sustain its claim because it fails to show damages.

threat of misappropriation. See 12 Pa. C.S.A. §5303(a). We find that genuine issues of material fact exist on this point and thus deny summary judgment.

**Count IV- Tortious Interference with Contract Against QRS**

We further deny summary judgment on the claim of "tortious interference with contract" because Plaintiff sets forth facts from which a reasonable juror could find QRS liable, whether under Colorado or Pennsylvania law. Moreover, Defendants did not identify or discuss this claim in their Motion for Summary Judgment. See Fed. R. Civ. P. 56(c)(1). In fact, Defendants were silent on this issue until their reply. Even then, Defendants provided a single argument: "if this Court holds that Mr. Ries did not violate the Employment Agreement, or that the restrictive covenants contained therein were unenforceable as a matter of law, QRS cannot be held liable for tortious interference." (Defs. Reply at 22, Doc. No. 27). Given our holding to the contrary, this argument fails.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment as to the breach of fiduciary duty claim against Defendant Ries and denies the Motion as to all remaining claims.